UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
RICHARD ABONDOLO, as chairman of     :
the Board of Trustees of UFCW LOCAL
342 WELFARE FUND, et al.,            :

        Plaintiffs          :

  -against-                         :    07 Civ. 4850 (AKH)

SIEGMUND STRAUSS, INC.,               :

        Defendants.         :
----------------------------------------X

## MEMORANDUM OF LAW

Meltzer, Lippe, Goldstein & Breitstone, LLP
Attorneys for Defendants
190 Willis Avenue
Mineola, New York 11501
(516) 747-0300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X
RICHARD ABONDOLO, as chairman of
the Board of Trustees of UFCW LOCAL    :
342 WELFARE FUND, et al.,
                Plaintiffs            :

    -against-                            :          07 Civ. 4850 (AKH)

SIEGMUND STRAUSS, INC.,                :
                Defendants.
———————————————————————X

## MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

Petitioners seek to audit the books and records of Siegmund Strauss, Inc. ("Strauss") based upon an invalid, unenforceable sham collective bargaining agreement (the "CBA"). As set forth in the accompanying Affidavit of Stanley Meyer in opposition to said application (the "Meyer Affidavit"), the parties never intended a true collective bargaining relationship and consequently, the collective bargaining agreements themselves are of no effect. The National Labor Relations Board is currently considering these issues and should be afforded the opportunity to determine same.

The instant action commenced by the Chairman of the Trustees of the, Local 342 UFCW ("Local 342") affiliated employee benefit funds, (collectively referred to herein as, the "Plaintiffs") against Strauss should be stayed and Plaintiffs' requested relief denied because (a) the central issue in this dispute is already pending before the National Labor Relations Board (hereinafter, the "NLRB"); (b) to allow the instant matter to proceed would risk inconsistent adjudications; (c) the NLRB is charged with expertise

concerning the issues in question; and (d) the subject issues are particularly within the NLRB's discretion.

It is respectfully submitted, therefore, that this Court should not determine the final effect of the sham collective bargaining agreement. As such a determination directly affects the representational rights of the employees of Strauss, for the reasons set forth below, the NLRB has sole, or at the least, "Primary" jurisdiction to determine said issue. Consequently, it is respectfully submitted that this Court should stay the Subject Application and Action pending the determination of the NLRB. Various proceedings before the NLRB to determine the effect of the collective bargaining agreement and representational rights of the employees have already been commenced by all parties in interest (i.e., the employer, Strauss, the employees in question and Local 342), as set forth in the Meyer Affidavit.

The evidence of the sham nature of the CBA is compelling. By way of example, for over 40 years, neither Local 342, nor the Plaintiffs, ever conducted an audit, checked the number of employees listed on quarterly tax returns against the employees listed on remittance reports[1]/, sought an arbitration (although both have sought arbitration within the past three weeks), asserted a grievance, posted a single document on Strauss' employee bulleting board, or in any way effectively communicated with or represented any of Strauss' employees.

It is well settled, as set forth in greater detail below, that where the NLRB has been presented with the issue, the Court should await its determine of all issues relating

---

[1]/ As set forth in the Meyer Affidavit, the only persons set forth on the remittance reports have been Strauss' owners and, at certain times, one or two managerial/supervisory employees, few if any of whom appear to be members of the alleged bargaining unit.

2

to the representation of employees, *Trustees of Eastern States Health and Welfare Fund v. Crystal Art Corp.*, 2000 WL 1514593 (S.D.N.Y.), wherein the Court stated:

> ... the present action raises issues which are primarily representational. Local 155 seeks to establish that it is the proper bargaining representative for the employees of both Crystal Art and Perfect Art, and that the defendant has engaged in unfair labor practices in violation of the CBA. The respective rights and duties of these two groups of employees are representational matters which should be decided in the first instance by the NLRB. *See Local 812 GIPA*, 1999 WL 301692, at *6.

*Accord*, *Brown v. Sandimo Materials*, 250 F.3d 120 (2d Cir. 2001), wherein the Court in discussing the United States Supreme Court's decision in *South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng's*, 425 U.S. 800, 805-06, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) stated:

> The Supreme Court found that the NLRB had never made a determination on the single bargaining unit issue and that the circuit court did not have jurisdiction to make that determination in the first instance. *See id.* at 805-06, 96 S.Ct. 1842. It therefore affirmed the circuit court on the single employer issue and remanded the bargaining unit issue to the NLRB. Thus, as recognized by the Fifth Circuit in *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489 (5th Cir.1982), *South Prairie* stands not for the proposition that the NLRB has exclusive jurisdiction over the bargaining unit issue, but rather for the basic principle that an agency should be afforded the opportunity to decide a factual issue before the issue is decided by an appellate court, *see id.* at 514.

In the case at bar, where all parties in interest have presented the NLRB with critical factual issues as to the representational status of Local 342, the validity of the

CBA and true nature of the collective bargaining relationship, the Subject Action should be stayed pending the NLRB's factual determinations.

Similarly the shameless forum shopping in which Local 342 and Plaintiffs have engaged should not be countenanced. It creates redundant and unnecessary litigation with the concomitant possibility of inconsistent adjudication. As stated in *Trustees,* "Simultaneous proceedings both before this Court and the NLRB raise a substantial risk of inconsistent rulings. Under these circumstances, permitting this action to continue would "duplicate effort and waste judicial resources." *Messinger v. Bldg. Contractors Ass'n, Inc.,* 703 F.Supp. 320, 323 (S.D.N.Y.1989). *See also Local 812 GIPA,* 1999 WL 301692, at *8 (staying action pending final resolution of NLRB proceedings)." Here, simultaneous proceedings before this Court, an arbitrator and the NLRB raise the identical problems and therefore the Subject Action should be stayed.

Based upon the above (as set forth in greater detail below) and the Meyer Affidavit and attached documents, it is respectfully submitted that the Subject Application and Action should be stayed pending the NLRB's determination of the threshold representational issues.

## POINT I

### THE SUBJECT ACTION SHOULD BE STAYED AS A RESULT OF THE NLRB'S PRIMARY JURISDICTION OVER THIS MATTER

The NLRB has primary jurisdiction in determining the issue of whether Local 342 has actually entered into a collective bargaining relationship with Strauss and thereby whether: (a) Local 342 actually represents Strauss' employees; and (b) the CBA upon

4

which Plaintiffs rely is of any force or effect. Therefore, the Subject Application and Action should be stayed pending the final resolution by the NLRB.

Although no fixed formula has been established for determining whether an agency has primary jurisdiction over a dispute, four (4) factors have generally been the focus of such an analysis, *National Communications Association, Inc. v. American Telephone and Telegraph Company*, 46 F.3d 220 (2d Cir. 1995). The four (4) factors considered in determining whether an administrative agency has primary jurisdiction over a specific issue are:

(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
(2) whether the question at issue is particularly within the agency's discretion;
(3) whether there exists a substantial danger of inconsistent rulings; and
(4) whether a prior application to the agency has been made.

In applying these factors to the instant matter, the NLRB should be permitted to exercise its primary jurisdiction.

In the Subject Action and in Local 342's unfair labor practice charge (previously filed with the NLRB), the Local 342 and its affiliated Funds seek to establish the existence of a valid collective bargaining relationship between Local 342 and Strauss, thereby purportedly establishing the validity of the CBA. This issue falls squarely within the NLRB's particular field of expertise. Respectfully, the perplexity inherent in resolving whether a true or sham collective bargaining relationship exists and whether Local 342 should be the Strauss employees' bargaining representative, brings this matter outside the conventional experience of the Court as it falls within the expertise and discretion of the NLRB. Consequently, the first and second factors in National are satisfied.

In addition, as these same issues are now simultaneously pending before this Court, the NLRB and Judge Austin in the Supreme Court of the State of New York, County of Nassau[2]/, the determination of these questions by this Court risks inconsistent adjudication. Simultaneous proceedings pending in different forums, all addressing the representational issue, present a substantial danger which can only be avoided by staying the Subject Action until the NLRB has issued its ruling. Therefore, the third <u>National</u> factor is satisfied.

As is set forth in the Meyer Affidavit, the NLRB has received a Charge from Local 342 and Petitions to decertify Local 342 from both Strauss and its employees. Consequently, the NLRB is familiar with the parties and issues involved in this matter and should be afforded primary jurisdiction. The parties' prior applications to the NLRB satisfy the fourth prong set forth in <u>National</u>.

*Trustees of Eastern States, Supra*, is remarkably similar. There the union sought arbitration and filed a charge with the NLRB, while the union's affiliated funds commenced an action in this Court. Here, all the same has occurred and in addition thereto the Plaintiff Funds have sought arbitration and all parties in interest have sought the NLRB's assistance.

In *Local 812 GIPA v. Canada Dry Bottling Co. of New York*, 23 Employee Benefits Cas. 1130, 1999 WL 301692 (S.D.N.Y.) as in *Brown v. Sandimo Materials, Supra,* the Courts noted the importance of the prior filings with the NLRB, as said filings distinguished said cases from *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F. 2d 489 (5th Cir. 1983) and *Mason Tenders District Council Welfare Fund v.*

---

2/   A Petition to stay Local 342's arbitration demands (currently subject to a temporary restraining order signed by Justice Austin on June 5, 2007) is currently pending, bearing Index No. 009591/07.

*ITRI Brick and Concrete Corp.*, 1997 WL 678164 (S.D.N.Y.). The prior filings brought those actions and the Subject Action within the dicta of those two (2) decisions, each of which opined that had their matters been presented to the NLRB, the wisest course would have been to stay the action pending resolution at the NLRB. *See also, Hotel & Restaurant Employees Union Local 217 v. J.P. Morgan Hotel,* 996 F.2d 561, 565 (2d Cir. 1993) and *Messinger v. Building Contractors Association, Inc.,* 703 F.Supp. 320, 323 (S.D.N.Y. 1989), wherein Judge Mukasey stayed proceedings pending resolution at the NLRB and stated:

> Allowing this lawsuit to proceed would duplicate effort and waste judicial resources, especially since any NLRB decision will have preclusive effect here.

Here, allowing the Subject Action to proceed would provide the identical duplicate effort and waste of resources. Here, the NLRB decision will have the same preclusive effect. Here, the same result as in *Trustees of Eastern States, Supra* (to wit: the stay of the Subject Action) should result.

An example of such wasted resources resulting from forum shopping and the failure to afford primary jurisdiction to the NLRB is evident in *Bevona v. Field Bridge Associates,* 140 L.R.R.M. 2913, 1991 WL 274467 (S.D.N.Y.) and 146 L.R.R.M. 3144, 1993 WL 498042 (S.D.N.Y.). In *Bevona*, disputes concerning both an alleged successor employer and which employees comprised the bargaining unit, commenced in 1987 with a demand for arbitration followed by a layoff and a strike. A Petition to stay arbitration followed and worked its way through the state court system up to the Court of Appeals. In 1988, the union also filed unfair labor practice charges with the NLRB. In July 1990, the union petitioned to enter judgment upon the arbitration award, but less than one (1)

7

month later, Administrative Law Judge Raymond P. Green dismissed the NLRB charges, **<u>finding no valid collective bargaining agreement.</u>** In 1991, Judge Ward stayed all proceedings pending resolution at the NLRB. In 1993, Judge Ward dismissed the Petition. The passing of more than five (5) years, the conducting of an arbitration, and litigation before wholly unnecessary bodies were all wasted because the NLRB was not promptly afforded primary jurisdiction. The potential delay and high cost of conducting simultaneous litigation in multiple forums virtually scream for the exercise of the NLRB's primary jurisdiction.

Permitting the NLRB to address this matter assures avoidance of the delay experienced by the parties in <u>Bevona</u>. Staying the instant Action pending the NLRB finding would allow for the adjudication of the central issue, while causing the least expense of time and money to the parties. Once concluded, the NLRB ruling would effectively resolve all issues.

It is unwise to proceed with the requested audit and Subject Action only to have the matter referred to the NLRB at a later date after expensive and time consuming litigation in multiple forums. Therefore, the matter should be stayed pending final resolution by the NLRB.

## POINT II

## THE NLRB HAS LONG DEALT WITH SIMILAR ISSUES OF SHAM COLLECTIVE BARGAINING AGREEMENTS

In cases such as *Weber*, 211 NLRB 1 (1974), *Bender Ship Repair* 188 NLRB 615 (1971), *Best Metropolitan Towel and Linen Supply Co., Inc.*, 29-RC-11221 (2005), Consumers Energy Group, Inc. 29-RC-9612 (2002), *United Artists Communications*, 280 NLRB 1056 (1986) and *Glenlynn, Inc. d/b/a McDonald's Drive-In Restaurant*, 204 NLRB No. 45, 204 NLRB 299 (1973), etc., the NLRB has dealt with the issue of sham collective bargaining agreements and whether the parties ever entered into a true collective bargaining relationship. The NLRB has set forth certain criteria it considers in determining the validity of a collective bargaining agreement.

In *Ace-Doran Hauling & Rigging Co.*, 171 NLRB No. 88, Case 9-CA-4228 (1968), the Court stated:

> In the light of these circumstances, we cannot conclude that these contracts raise a presumption of regularity or that the "Union" was the majority representative of Respondent's employees, either in an employerwide or multiemployer unit.
>
> The evidence relating to the practice under the agreements further makes it clear that the parties did not intend them to be effective collective-bargaining contracts, but instead merely regarded them as arrangements under which Respondent agreed to check off dues, health and welfare, and pension payments for union members only. **The acquiescence of the Unions in Respondent's failure both to enforce the union-security provisions of the agreements and to pay health and welfare contributions for all employees (as ostensibly provided by the "contracts"), makes it clear that the parties did not believe that they**

9

> **were in true collective-bargaining relationships.**
> (Emphasis added.)
>
> Since the alleged agreements are not such as would give rise to a presumption of majority status, we find that the General Counsel has failed to sustain his burden of proof and therefore that the complaint should be dismissed.

In *Weber, Supra,* the NLRB addressed more specific factors, virtually all of which are present in the case at bar:

> ... the evidence leaves one highly skeptical that a real collective-bargaining relationship emanated from the execution of the ... contract ... it is undisputed that the Union neither administered the contract nor serviced the employees. As a result, not only were the employees deprived of contractual benefits pertaining to such matters as wage rates, health and welfare fund contributions, meals, uniforms, job duties, and holidays, but that were subjected to working conditions unilaterally imposed by the Respondent without any protest from the Union. .... In addition to the Union's indifference to employee interests, it did not serve its own much better. Although the contract contained union-security provisions, it did not bother to enforce them. Apparently, the Union was content with the few employees the Respondent periodically signed up for the Union and with the initiation fees and dues the Respondent deducted from the wages of these employees. ....
> In sum, I find that the parties never entered into a true collective-bargaining relationship out of which a presumption of the Union's majority status may arise. At best, the relationship was a token one where "the Union was willing to exact little in the way of contract enforcement and ..., [the Respondent was] satisfied to reap the financial benefit of lower costs." In these circumstances, and in view of the equivocal nature of the bargaining unit, I find the evidence insufficient to support a presumption that the Union was the majority representative of the employees...

> The evidence in the present case leaves no doubt that until around the beginning of July 1972, a month before the Union sent its notice to desire to reopen, there was, at most, token compliance with the contract. ... The Union did not "service" the employees in any manner. Indeed, the part-time employees, who constituted around 75 percent to 85 percent of the unit, apparently did not even know they were "represented" by a union or covered by a collective-bargaining agreement.
>
> According, on all the evidence, I find that the past purported collective-bargaining agreements between Respondent and the Union were sham and did not give rise to any presumption of majority status on the part of the Union.

The similarity to the case at bar is striking, as here, as in *Weber*, the employees dealt with their own grievances, negotiated their own terms and conditions of employment, etc. Perhaps the most striking similarity is in the Plaintiffs' and Local 342's acquiescence; its willingness to "...exact little in the way of contract enforcement and ..., [Strauss was] satisfied to reap the financial benefit of lower costs." Only upon the onset of the Local 342's affiliated Funds' financial difficulties did this change and the change cannot be unilateral.

Similarly, in cases like *United Artists, Supra,* the NLRB found one year of inattention by the union to render the collective bargaining agreement abandoned and/or a sham. *Best Metropolitan Towel, Supra,* illustrates that the holding of arbitrations or failure to seek same is critical in determining sham status. *Bender Ship Repair, Supra,* reveals both the importance of: (a) at least including wage requirements for the employees a union purports to represent; and (b) the NLRB's acknowledgment that collective bargaining agreements have been entered into, as here, not to create a true

11

collective bargaining relationship, but rather to provide lower costs to a favored few on the employer side and economic benefits to the union itself.

In any event, what is most clearly revealed by the foregoing is the familiarity and expertise of the NLRB in considering the central issues presented in the Subject Action. Consequently, under either the doctrine of "primary jurisdiction" or "Garmon preemption" [The Supreme Court has said that "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA] ... federal courts must defer to the exclusive competence" of the NLRB. *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245 (1959). *Trustees of Eastern States, Supra*] it is the NLRB who should determine the representational rights and obligations put into question in the case at bar.

## CONCLUSION

WHEREFORE, it is respectfully requested that the Subject Application to audit Strauss be denied without prejudice and the case at bar be stayed without prejudice, pending a ruling by the NLRB and that Straus be awarded the costs and disbursements of this motion, as well as such other and further relief as this Court deems just and proper.

Dated:     Mineola, New York
           June 18, 2007

                                    Yours, etc.
                                    Meltzer, Lippe, Goldstein & Breitstone, LLP

                                    By _____
                                         Richard M. Howard (RMH-2932)
                                         Attorneys for Defendants
                                         190 Willis Avenue
                                         Mineola, New York 11501
                                         (516) 747-0300

Rich/Siegmund/brief in opp.403090