# COLLECTIVE BARGAINING AGREEMENT

**SIEGMUND STRAUSS 7245**
~~Bronx Terminal Mkt. Stall 10~~
**Bronx, NY 10451**

### AND

## UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 342

### L 50 DIVISION

### DISTRIBUTIVE DIVISION

## NOVEMBER 1, 2004 TO OCTOBER 31, 2008





RECEIVED
OCT 2 4 2006
By

**ORIGINAL**

## TABLE OF CONTENTS

ARTICLE 1 - SCOPE OF AGREEMENT ......................................................... 3
ARTICLE 2 - UNION SECURITY ................................................................. 3
ARTICLE 3 - HIRING NEW MEN OR REPLACEMENTS ........................... 4
ARTICLE 4 - FAIR EMPLOYMENT PRACTICES ...................................... 4
ARTICLE 5 - TYPE OF WORK .................................................................... 5
ARTICLE 6 - WAGES .................................................................................. 6
ARTICLE 7 - WORKING HOURS ............................................................... 9
ARTICLE 8 - UNION SECURITY AND CHECK-OFF OF UNION ............ 11
ARTICLE 9 - VACATIONS ........................................................................ 11
ARTICLE 10 - JURY DUTY ....................................................................... 13
ARTICLE 11 - SICK LEAVE ...................................................................... 13
ARTICLE 12 - LEAVE OF ABSENCE ........................................................ 14
ARTICLE 13 - HOLIDAYS ......................................................................... 14
ARTICLE 14 - WELFARE TRUST FUND ................................................. 15
ARTICLE 15 - PENSION TRUST FUND .................................................... 19
ARTICLE 16 - INTERNATIONAL UFCW FUND ..................................... 19
ARTICLE 17 - ANNUITY BENEFIT FUND ............................................... 20
ARTICLE 18 - SAFETY-EDUCATION-CULTURAL FUND ..................... 20
ARTICLE 19 - LEGAL FUND ..................................................................... 21
ARTICLE 20 - MANAGEMENT AND ADMINISTRATION OF THE TRUST FUNDS ........ 21
ARTICLE 21 - SEVERANCE PAY AND SEVERANCE PAY FUND ..................... 22
ARTICLE 22 - DISCHARGE-LAYOFF ....................................................... 24
ARTICLE 23 - GRIEVANCES ..................................................................... 24
ARTICLE 24 - SENIORITY ......................................................................... 25
ARTICLE 25 - STRIKES, LOCKOUTS AND STOPPAGES ........................ 25
ARTICLE 26 - SHOP STEWARDS .............................................................. 25
ARTICLE 27 - REAL PARTY IN INTEREST .............................................. 26
ARTICLE 28 - MISCELLANEOUS ............................................................. 26
ARTICLE 29 - SAVINGS CLAUSES ........................................................... 29
ARTICLE 30 - BEGINNERS NEW TO THE INDUSTRY ........................... 30
ARTICLE 31 - DURATION AND RENEWAL ............................................. 31

Local 342 has attempted to print in this contract booklet what it believes to be the final terms of the Collective Bargaining Agreement with your Employer. However, at times these booklets may contain typographical errors. In the event of any discrepancies between the herein booklet and the actual contract, the terms of the actual signed contract shall prevail.

**THIS COLLECTIVE BARGAINING AGREEMENT**, made by and between

**SIEGMUND STRAUSS 7245**
**Bronx Terminal Mkt. Stall 10**
**Bronx, NY 10451**

(Address)

(Hereinafter referred to as the "Employer") and the **UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 342**, having its principal office located at 166 East Jericho Turnpike, Mineola, New York 11501 (hereinafter referred to as the "Union"); and

**WHEREAS**, the parties hereto desire to establish an instrument for the regulation of terms and conditions by which the employees shall work during the term of this Agreement; and

**WHEREAS**, both parties hereto desire to promote mutual conditions and covenants thereto;

**NOW, THEREFORE**, the parties hereby agree to and with each other as follows:

## ARTICLE 1 - SCOPE OF AGREEMENT

(a)    This Agreement covers all phases of selling, delivery and warehouse work of the Employer performed by the employees within the Jurisdiction of the Union. This Agreement shall also cover office workers, production employees, and such other employees as may presently be represented by the Union.

(b)    The employees covered by this Agreement shall include, but are not limited to, salesmen distributors, foot salesmen, house salesmen, special deliverymen chauffeurs, route riders, shipping clerks, warehousemen and luggers employed by the Employer. In addition, this Agreement shall cover office workers, production employees, and such other employees as may presently be represented by the Union.

## ARTICLE 2 - UNION SECURITY

(a)    The Employer recognizes and acknowledges that the Union is the exclusive Representative of all employees covered by this Agreement for the purposes of collective bargaining as provided by the National Labor Relations Act.

(b)    The present employees who are members of the Union on the date of the execution of this Agreement shall remain members of the Union in good standing as a condition of employment. All present employees who are not members of the Union and all employees hired hereafter shall become and remain member in good standing of the Union as a condition of employment on and after the 31st day following the beginning of their employment or on or after the 31st day of the

Agreement, whichever is the later. This clause shall be applied strictly in accordance with the requirements of the NLRA, as amended.

(c)    In the event the Labor Management Relations Act of 1947 is repealed or modified so as to permit greater Union Security than is contained in this Agreement, then this Agreement shall be considered modified to that extent, it being the intent of the parties that the Union will receive the maximum security which may be lawfully permissible.

(d)    If any employee shall fail to obtain or retain membership in good standing in the Union, as required by Subsection (a) above, the Employer shall discharge such employee upon demand of the Union.

## ARTICLE 3 - HIRING NEW MEN OR REPLACEMENTS

(a)    The Employer shall notify the Union when new employees are to be hired. The Union shall have the right to send applicants for the job or jobs and the Employer agrees to interview such applicants and give the same interview considerations to the Union-referred applicants as is given to applicants from other sources. This provision shall not be deemed to require the Employer to hire Union applicants or to preclude the Employer from hiring employees from other sources. The Employer reserves the right to finally pass on the experience of all applicants. During the probationary thirty (30) days, the employee may be discharged without further recourse; provided that the Employer may not discharge or discipline for the purpose of evading this Agreement or discriminating against Union members. In case of discipline within the probationary period, the Employer shall notify the Local Union in writing.

(b)    In the event an employee absents himself because of illness, the Employer shall be at liberty to temporarily substitute the absentee with any other person in the employ of the Employer provided the regularly employed man shall receive his salary during this period of illness. Under no circumstances shall the Employer replace an employee who is ill and terminate this salary until at least the period of sick leave provided in Article 11 has expired. The salary of the regularly employed man shall cease when the Employer engages another man supplied by Local 342; if the Union is unable to supply another man then the Employer shall be free to engage one elsewhere and the salary of the regularly employed man shall then cease, but this provision shall not apply if the Employer, for any reason, rejects a man supplied by the Union.

## ARTICLE 4 - FAIR EMPLOYMENT PRACTICES

(a)    The Employer and Union agree that the principle of nondiscrimination shall be applied to all aspects of the employment relation in line both with national policy and with basic requirements of humanity and equity.

(b)    The Employer, in implementing this principle, agrees that is will not discriminate against any employee or applicant for employment because of race, nationality, sex, color, creed, age, or Union membership, except (other than with respect to Union membership) when bonafide

occupational qualification is reasonably necessary to the normal operation of the Employer's business or enterprise.

(c)    Either the Employer or the Union may submit grievances or complaints of discrimination to the grievance procedure established for the settlement of disputes arising under this Agreement.

## ARTICLE 5 - TYPE OF WORK

(a)    Salesmen distributors shall perform the work of selling the products either manufactured or distributed by the Employer, and making the contemporaneous delivery thereof to the customers who purchased the same and collecting therefore. They shall remit cash collections to the Employer daily, or the following day if they do not return to the Employer's premises at the end of the day's route, provided that the Employer has an authorized Representative present on the premises to collect and giver receipt for such sums.  If the employee does return to the Employer's premises at the end of the day's route and the Employer has not such authorized Representative present, then the salesman distributor shall not be responsible for the theft or loss. No employee shall be responsible for losses of money or merchandise due to robbery, theft or burglary, unless due to the employee's own fault.

(b)    House salesmen shall perform the work of selling on the premises the products wither manufactured or distributed by the Employer.

(c)    Foot salesmen or salesmen using automobiles shall perform the work of selling and/or soliciting the sale of the products either manufactured or distributed by the Employer and making collections therefore.

(d)    Special deliverymen chauffeurs shall perform the work of making the deliveries of the provisions and products of the Employer where the salesmen distributors do not or cannot make the delivery at the time such salesmen distributors make the sale, and such other services as are customary to chauffeurs operating delivery trucks.  Special deliverymen chauffeurs shall not be required to do the work of employees of other Employers.

(e)    Special deliveries made to the customer of the salesmen distributors or foot salesmen shall be credited to such salesmen distributors and foot salesmen, or merchandise picked up at the plant by a customer of a salesman distributor or foot salesman shall be credited to such salesmen distributors or foot salesmen.  If the Employer shall fail, without legitimate excuse, to credit salesmen distributors or foot salesmen, the Employer shall by required to pay one (1) week's pay to such salesmen distributors or foot salesmen.

(f)    Route riders shall relieve salesmen distributors and operate their routes during periods of illness, injury, vacation or emergency.

(g)     Supervisors shall supervise the work of other employees and may engage in selling and aiding the salesmen distributors in increasing sales. Under no circumstances shall they operate a truck or service a route.

(h)     All other employees covered hereby (e.g., warehousemen and luggers, shipping clerks and office workers) shall perform the same types of duties they have customarily performed.

(i)     During the working day, employees are to work exclusively for their Employer and shall not carry in their delivery trucks the products of any other company except with the consent of their Employer. No employee covered by this Agreement shall solicit customers for, or solicit the business of any person, firm or corporation other than the Employer.

## ARTICLE 6 - WAGES

(a)     There shall be a wage increase to all employees on the payroll on the following dates.

| 11/1/04 | 11/1/05 | 11/1/06 | 11/1/07 |
|---------|---------|---------|---------|
| $20.00  | $16.00  | $20.00  | $28.00  |

(b)     The following shall be the minimum wage scales for all such employees:

| | 11/1/04 to 10/31/05 | 11/1/05 to 10/31/06 | 11/1/06 to 10/31/07 | 11/1/07to 10/31/08 |
|---|---|---|---|---|
| Special Deliverymen Chauffeurs | $726.00 | $742.00 | $762.00 | $790.00 |
| Trailer Truck Drivers | $757.00 | $773.00 | $793.00 | $821.00 |
| Over-the-Road Drivers | $772.00 | $788.00 | $808.00 | $836.00 |
| Route Riders | $760.00 | $776.00 | $796.00 | $824.00 |
| Working Supervisors | $860.00 | $876.00 | $896.00 | $924.00 |
| Shipping Clerks, Luggers and Warehousemen | $725.00 | $741.00 | $761.00 | $789.00 |

(c)     Salesmen Distributors shall be paid as follows: Commencing November 1, 2004, the minimum guarantee shall be $723.00 per week, consisting of $568.00, plus commissions as set forth above. Commencing November 1, 2005, he minimum guarantee shall be $739.00 per week, consisting of $584.00 per week in salary, plus commissions as set forth above. Commencing November 1, 2006, the minimum guarantee shall be $759.00 per week, consisting of $604.00 per week in salary, plus commissions as set forth above. Commencing November 1, 2007, the minimum guarantee shall be $787.00 per week, consisting of $632.00 per week in salary, plus commissions as set forth above.

(d)     Foot Salesmen shall receive five percent (5%) commission on all products sold with a minimum guarantee of $773.00 per week commencing November 1, 2004, $789.00 per week

commencing November 1, 2005, $809.00 per week commencing November 1, 2006, and $837.00 per week commencing November 1, 2007.

(e)    <u>The following rules shall be applicable with respect to employees earning commissions:</u>

(i)    Commissions are to be paid weekly on the basis of gross sales, except for reduced prices attributable to special sales being run by the customer and regular trade discounts as to either of which the salesman has been advised prior to delivery. Each salesman is to be furnished with a weekly statement showing total sales to each customer. If a salesman shall not so receive his weekly statement, he shall not be responsible for shortages.

(ii)    There shall be no deduction from salesmen's commissions by reason of returns, credits or other allowances (except for customer's special sales and regular trade discounts as to either of which he salesmen have been advised prior to delivery), the Employer's failure or inability to collect sums billed, whether resulting from a customer's bankruptcy, termination of business or other cause, unless the salesmen have violated the Employer's written instructions as to credit sales.

(iii)    A shrinkage allowance of two percent (2%) shall be given to salesmen distributors on all merchandise, which they have to reweigh at a customer's premises.

(iv)    Salesmen are not to be charged for shortages unless they verify the weight or piece count and sign the corresponding slip.

(v)    In the event a salesmen's weekly sales indicate either a shortage or an overage on the various products sold by him, then such shortage or overage shall be adjusted by applying the shortages against the overages.

(vi)    Any salesmen distributor whose average sales exceed 7,999 pounds per week over a two (2) months period shall be paid an additional fifty dollars ($50.00) per week by the Employer for the ensuing two (2) months.

(vii)    The Employer must credit salesmen distributors for all merchandise returned to the Employer, whether in sealed boxes or open boxes, except if returned after the shelf life date stated on the product.

(viii)    Salesmen distributors shall not be responsible for merchandise charged to them in calibration not readily re-weighable at a customer's premises.

(ix)    Salesmen distributors may sell merchandise in less than full cartons or boxes if requested by their customers.

(f)    The following rules shall apply with respect to <u>special deliverymen chauffeurs</u>:

(i)    Whenever a delivery or pickup of a special deliveryman chauffeur exceeds 20,000 pounds, a helper shall be supplied to a deliveryman, except when the deliveryman is not required

to load or unload. Where exclusively mechanized or palletized loading or unloading is used and the deliveryman is not required to perform any part of this work manually, then even if a delivery or pick-up exceeds 20,000 pounds, no helper shall be required. Where a helper is required by reason of this paragraph, he shall be supplied on each run, and if not supplied, the Employer shall compensate the deliveryman by paying him an additional twenty-five dollars ($25.00) for each run.

     (ii)    Special deliverymen chauffeurs are not to be charged for shortages, unless they verify the weight or piece count and sign the corresponding slip.

(g)    Any extra employee who works four (4) days or less during any work week shall receive two dollars ($2.00) per day more than the regular rate for his classification asset forth above.

(h)    Salesmen distributors, special deliverymen chauffeurs, and any other employee whose duties include handling the products of the Employer, shall be supplied with at least two (2) uniforms each week, paid or by the Employer, and in the summer months, at least two (2) summer or lightweight uniforms per week shall be supplied. The Employer shall make available protective thermal clothing for employees working in a freezer and jackets for all those working in refrigerated areas. If he Employer shall fail to furnish he uniforms required to be furnished, then the employee shall have the right to purchase the same at the Employer's expense, not to exceed one hundred dollars ($100.00) per uniform, and the Employer shall reimburse the employee within seven (7) days after demand. Sanitary dressing rooms and lockers shall also be provided. Employees shall be responsible for the return of all uniforms.

(i)    Route Riders when operating a route shall receive the same base pay, commissions, and minimum guarantee as a route salesman rather than the route riders' wage rate.

(j)    Over-the-Road drivers shall receive, in addition to their wage rate, their actual expenses for room and board, plus thirty-five dollars ($35.00) per night when they are required to stay away overnight.

(k)    Employees assigned to a night shift shall receive a forty-five cent (45¢) per hour premium over the wage scales set forth above as their night shift minimum wage rates. Their overtime shall be computed on the basis of their night shift minimum wage rates.

(l)    Salesmen or Collectors requiring the use of their own car shall receive a car allowance of fifty cents (50¢) per mile with a maximum of one hundred and fifty dollars ($150.00) per week. Out of town salesmen shall be reimbursed for hotel and food expenses upon presentation of receipted vouchers.

(m)    Each salaried, non-commissioned employee on the Employer's payroll as of October 31, 1996, (qualified as herein below provided) shall receive in addition to all other compensation a seven hundred and eight dollar ($708.00) bonus in the first year, a seven hundred and eight dollar ($708.00) bonus in the second year and a seven hundred and eight dollar ($708.00) bonus in the third year, payable in three equal installments on the first payroll dates of March, July and November of each year. To qualify for such a bonus, and employee shall have worked at least

one (1) month in the third of a year preceding payment, and if he shall so qualify, but have worked less than a full third of the year, then his bonus shall be prorated. If any Employer elects in writing at the execution of this Agreement not to invoke the short-work provisions stated in Article 7 (n), the bonus in each year of the contract shall be six hundred and six dollars ($606.00). All employees hired on or after November 1, 1996, shall receive annual bonuses of three hundred and three dollars ($303.00) payable in installments on the dates set forth above.

## ARTICLE 7 - WORKING HOURS

(a)     The minimum guaranteed workweek for special deliverymen chauffeurs and salesmen distributors shall be forty (40) hours weekly, distributed equally over five (5) days. The hours shall be consecutive and no staggering of hours shall be permitted.

(b)     Overtime work performed by special deliverymen chauffeurs above eight (8) hours in any one day shall be paid at the rate of one and one-half (1½) times the regular rate of wages per hour.

(c)     The parties acknowledge that problems exist in enabling salesmen distributors to obtain provisions at Employer's plants as expeditiously as practicable so that they may begin distributing with as little unnecessary waiting time at the plant as possible. A salesman distributor shall not be required to wait at the plant more than two (2) hour s after his full order is placed. If the Employer shall cause any delay beyond two (2) hours after a salesman distributor's full order is placed, then the Employer shall pay the affected employee for each hour, or fraction thereof, of delay on the basis of his average weekly earnings reduced to an hourly rate on the basis of a (40) hour week.

(d)     Regular starting time for special deliverymen chauffeurs shall be no earlier then 5:00 A.M. and no later then 8:30 A.M.  The working day is to be computed from the time of the employee's arrival at the place he is directed to pick up the truck and the finish of the day at the place he is directed to deliver the truck.  In the event that the special deliverymen chauffeurs tie up their trucks in places other than the garage in which they started, they shall be paid traveling time, plus carfare.  If traveling time shall extend beyond the normal eight (8) hour workday, such time shall be paid for at the overtime rate.  If special deliverymen chauffeurs are required to travel to place other than their main garage to pick up a truck, they shall be paid traveling time, plus carfare, for the time it takes to travel from their main garage to the point of pick-up.

(e)     If an employee is requested to report for work before 5:00 A.M., he shall be paid for such period at the overtime rate, in addition to a guarantee of eight (8) hours work at straight time.

(f)     Any employee working Saturday, Sunday, or on a holiday shall be paid at the rate of double (2) time for such days with a guarantee of pay for at least five (5) hours on such days. All employees working on commissions shall have such double (2) time computed on the basis of one-fifth (1/5) of their weekly base pay and commissions for those days shall continue without premium increase. The employees and the Union shall receive at least two (2) days prior notice

of holiday, Saturday or Sunday work. All employees required to work on holidays shall receive pay for the holiday in addition to the above provided for premium pay for holiday week.

(g)     Salesmen distributors and special deliverymen chauffeurs shall not be required to work more than five (5) days per week. Saturdays and Sundays shall constitute the days off. In the event the Employer, through no fault of the Union, operates less than the working hours or days provided for in this contract, it shall in no way affect the weekly guaranteed earnings of all employees covered by this Agreement. No part of the salesman distributor's weekly guarantee shall be charged as sick pay.

However, if inability to operate shall result from fire, flood, Act of God, or similar force majeure, this paragraph shall not apply, provided the Employer shall have given each employee reasonable advance notice not to report for work on such day or days. If no such notice is given, however, and the employee shall report to work, then the employee shall be entitled to his pay for such day or days.

(h)     Shipping clerks, warehousemen and luggers covered by this Agreement shall work a forty (40) hour week distributed equally over five (5) days. The hours shall be consecutive and no staggering of hours shall be permitted. Overtime work performed by such employees in excess of eight (8) hours in any one day, shall be paid at the rate of one and one-half times the regular rate of wages per hour.

(i)     Office workers covered by this Agreement shall work a thirty-five (35) hour week distributed evenly over five (5) days. The hours shall be consecutive and no staggering of hours shall be permitted. Overtime work performed by such employees in excess of eight (8) hours in any one day, shall be paid at the rate of one and one-half times the regular rate of wages per hour.

(j)     Shipping clerks, warehousemen and luggers and office workers covered by this Agreement shall receive a fifteen (15) minute rest period at the end of the first three (3) hours of work in both the morning and afternoon period. In the event such employees' work overtime on any particular day, they shall receive a fifteen (15) minute rest period during such overtime period. Rest periods shall in no way differ from those enjoyed by other inside employees, however.

(k)     A daily written time record shall be maintained by the Employer for all of his employees and each entry shall be signed by the applicable employee. Alternatively, the Employer shall maintain a time clock and the employee's time shall be computed by the time clock on time cards. If the Employer has prior to November 1, 1978, used the time clock system, he must continue to use such system.

(l)     All employee shall be entitled to a lunch hour which shall consist of one (1) hour and shall not start before the fourth (4th) hour of work and shall be completed by the sixth (6th) hour of work. No employee shall take less than one (1) hour for lunch unless mutually agreed upon by the Union and the Employer. Any employee who is ordered to work during any part of his assigned lunch hour shall be paid for the full lunch hour at the applicable overtime rate and shall

further receive twenty (20) minutes to eat lunch, such twenty (20) minutes being credited as time worked.

(m)    Breakdown pay shall be paid to salesmen distributors after the first two (2) hours of breakdown provided the employee gave the Employer proper notification of the breakdown. Such breakdown pay shall be computed on the salesman's average pay, reduced to an hourly rate on the basis of a forty (40) hour workweek.

(n)    In any four (4) weeks during each contract year, the Employer may schedule a short-work week of four (4) days for all bargaining unit employees. In such event, the non-working days must be either Monday or Friday. If the scheduled day off is Friday, no employee affected shall be required to work the following Saturday. In order to schedule a short-work week, Employer shall give its employees and the Union not less than two (2) days' notice of its intention to do so. In such event, no employee shall be required to work more than ten (10) hours per day including overtime during that week. If after giving notice of a short-work week, Employer changes its mind, it shall have the option of not working on the day off originally scheduled and if he does report for work, he shall be guaranteed five (5) hours work or pay in lieu thereof.

## ARTICLE 8 – UNION SECURITY AND CHECK-OFF OF UNION

(a)    The Employer agrees to deduct from the wages of employees covered by this Agreement, initiation fees, dues and uniform assessments of the Union including deductions for repayment to the Credit Union and the Employer agrees to remit to the Union all such deductions prior to the end of the month for which the deductions are made from the wages of employees covered by this Agreement who authorize such deductions in writing and furnish such authorization to the Employer in the form required by applicable Federal and State Law.

(b)    Should any member of the Union be suspended or expelled from the Union for nonpayment of dues and initiation fees uniformly required as a condition of membership, the Employer agrees to discharge such employee within seven days after receiving notice thereof from the Union.

(c)    Should the Employer fail to comply with the terms of this Article, then the Union shall have the right to order a strike without the requirement of first proceeding with the grievance and arbitration procedures herein provided for, and such strike shall not be construed a breach of this contract.

## ARTICLE 9 – VACATIONS

(a)    The terms of this paragraph shall apply to all employees hired prior to November 1, 1996. Each employee shall receive vacation with pay as per the following schedule:

| | |
|---|---|
| 6 months, but less than 1 year | 1 week |
| 1 year, but less than 5 years | 2 weeks |

| | |
|---|---|
| 5 years, but less than 10 years | 3 weeks |
| 10 years, but less than 20 years | 4 weeks |
| 20 years or more | 5 weeks |

The third (3rd), fourth (4th) and fifth (5th) week of vacation need not be consecutive. All vacations must be taken or paid for each year. Vacations shall be scheduled throughout the year by the mutual Agreement of the Union and the Employer. Vacations shall be measured by the employee's full work history at the plant, including work for the Employer, its successors and assigns, and its predecessors working under a collective Agreement with the Union.

(b)     Payment for vacations of salesmen distributors, special deliverymen chauffeurs and route riders only shall be determined on the basis of the average weekly earnings in the six (6) months immediately preceding vacation for those entitled to two (2) week's vacation, and for those entitled to two (2) or more weeks vacation, on the basis of fifty-two (52) weeks earnings prior to vacation or by calculating the employee's earnings for the prior calendar year for the fifty-two (52) weeks reported on the employee's W-2 return. All other employees shall be paid for vacation on the basis of their regular rates of pay. Payment for such vacations must be made prior to the employee leaving for vacation.

(c)     When a holiday enumerated in this contract falls during the employee's vacation, the employee shall receive an extra day's vacation or an extra day's pay, as the Employer and the Union may agree, calculated as provided in Article 9 above.

(d)     Extra employees shall be entitled to vacation based on average weekly earnings and computed on the basis of days worked as per the following schedule:

| Days Worked | Vacation Days | Days Worked | Vacation Days |
|---|---|---|---|
| 20 | 1 | 130 | 8 |
| 40 | 2 | 140 | 9 |
| 60 | 3 | 150 | 10 |
| 80 | 4 | 160 | 11 |
| 100 | 5 | 170 | 12 |
| 110 | 6 | 180 | 13 |
| 120 | 7 | 190 | 14 |
| | | 200 | 15 |

(e)     Employees leaving or discharged from the employ of the Employer shall receive full vacation pay if the employee has worked six (6) months or more since his last vacation began. If the employee has worked less than six (6) months since is last vacation began, then he shall receive prorated vacation pay, at the rate of 1/12th of his last vacation period for each month of work until he shall have reached six (6) months. In case of the death of an employee, the vacation pay due him shall be paid to his spouse or if she shall have predeceased him, then to his estate, such pay to be computed on the basis of the employee's average weekly earnings.

(f)     Welfare, Pension and Severance Fund contributions shall be due and payable on all vacation pay.

(g)     Whenever a salesman distributor shall be on vacation, his substitute shall be a route rider regularly in the Employer's employ or a substitute selected in accordance with Article 3.  All other vacationing employees shall be substituted for by employees of like classifications selected in accordance with Article 3.

(h)     All employees hired on or after November 1, 1996 shall be entitled to vacation with pay as per the following schedule:

| | |
|---|---|
| 1 year, but less than 2 years | 1 Week |
| 2 years, but less than 7 years | 2 Weeks |
| 7 years, but less than 12 years | 3 Weeks |
| 12 years, or more | 4 Weeks |

## ARTICLE 10 - JURY DUTY

An employee who loses time from his job because of jury duty, as certified by the clerk of the court, shall be paid by the Employer the difference between his job rate for eight (8) hours and the daily jury fee for (i) in the case of employees hired prior to November 1, 1996, a maximum of ten work days in any calendar year, or (ii) in the case of employees hired on or after November 1, 1996, a maximum of three (3) work days in any calendar year, subject to the following conditions: (a) Time lost because of jury service will not be considered time worked for purposes of computing overtime, (b) The employee must notify the Employer immediately upon receipt of a summons for jury duty, (c) At the Employer's request, adequate proof must be presented of time served on a jury, and the amount received for such service and (d) Salesmen distributors shall be paid on the basis of the minimum weekly guarantee.

## ARTICLE 11 - SICK LEAVE

(a)     Each employee covered by this Agreement hired prior to November 1, 1996 shall be entitled to an annual ten (10) days' sick leave with pay.  Employees hired on or after November 1, 1996 shall be entitled to an annual five (5) days' sick leave with pay during, their first ten (10) years of employment and to ten (10) days' paid sick leave after ten (10) full years of employment.  Salesmen distributors, special deliverymen chauffeurs and route riders shall be paid on the basis of average earnings and all other employees on the basis of their regular rates of pay.  Sick leave pay shall be paid for concurrently with the taking of the sick leave.

(b)     Any days of unused sick leave shall be paid to the employee will be paid within thirty (30) days after each contract year up to a maximum of ten (10) days.  Such pay shall be computed on the basis of the employee's average weekly earnings.

(c)    Temporary or new with less than two months of service shall not be entitled to any sick leave pay.  Upon the completion of the first two (2) months of employment, an employee shall become entitled to the full annual sick leave entitlement, but unused or termination sick leave pay shall be prorated it any employee shall have worked less than a year.

(d)    Any employee scheduled for a Workmen's Compensation hearing during a working day will be given time off with pay by the Employer to attend such hearing.  He must, however, report to work in the morning and call the Employer at the end of the hearing to see whether the Employer wishes him to return to work.

(e)    When an employee's employment is terminated, he shall be paid whatever sick leave he has accrued to the date of termination.  In case of death, unused sick pay shall be paid to his spouse or if she shall have predeceased him, then to his estate, such pay to be computed on the basis of the employee's average weekly earnings.

(f)    An employee, upon expiration of his paid sick leave, shall be entitled to unpaid sick leave by reason of illness or injury and shall have the right to return to his job, without loss of seniority, for one year from the commencement of such sick leave.


## ARTICLE 12 - LEAVE OF ABSENCE

Each employee covered by this Agreement shall be allowed up to five (5) working days leave of absence with pay, based on average earnings for salesmen distributors, special deliverymen chauffeurs and roué riders and based on regular rates of pay for all other employees, during each contract year when death occurs in employee's immediate family; two (2) days leave of absence for mother-in-law and father-in-law; one (1) day leave of absence for other in-laws and grandparents.  "Immediate family" means spouse, children, parents, brothers and sisters.  The Employer shall have the right to request the employee to furnish a death certificate, at the Employer's expense.


## ARTICLE 13 - HOLIDAYS

(a)    The Employer must allow each employee hired prior to November 1, 1996 to following holidays with pay:

| | |
|---|---|
| New Year's Day | Veteran's Day* |
| Lincoln's Birthday* | Thanksgiving Day |
| Washington's Birthday | Christmas Day |
| Memorial Day | Good Friday, for those who observe |
| Independence Day | Rosh Hashanah (2 days) for those who observe |
| Labor Day | Yom Kippur, for those who observe |
| Columbus Day* | First Day of Passover, for those who observe |
| Election Day* | |

Employees hired on or after November 1, 1996 shall enjoy all of the above holidays except that they shall be allowed only one day of Rosh Hashanah and shall not be allowed the First Day of Passover.

*These holidays may be replaced by four (4) personal days to be taken when it is mutually convenient for the Employer and employee. It is an option, however, for each individual firm if they want to work these holidays or not. No employee can be required to work on his personal day once the date of celebration has been agreed upon. A personal day may not be taken during a week in which a holiday occurs or on the day before or after a three (3) day weekend unless, as stated, it is mutually agreed upon.

(b)      In Kosher firms only: (i) Martin Luther Kind Day shall be substituted for Columbus Day and (ii) all Jewish Holidays shall be substituted for the Jewish Holidays listed above.

(c)      In the event of a public holiday, as enumerated above, shall fall on a Saturday, all employees shall receive an extra day's pay for such holiday based on the guaranteed weekly minimum.

(d)      In addition to the weekly pay, the salesmen distributors shall receive the difference between the base pay and the guaranteed pay for any holiday that falls during the workweek.

(e)      Payments for paid holidays shall not be included as part of a salesman distributor's minimum guaranteed pay.

(f)      All employees on sick leave, leaves of absence, or vacation shall be entitled to receive payment for a paid holiday that falls within such leave or vacation.

## ARTICLE 14 - WELFARE TRUST FUND

(a)      For all employees hired prior to November 1, 2004, the Employer agrees to continue to contribute to the Local 50 Welfare Trust Fund a weekly sum of one hundred and forty-five dollars and fifty cents ($145.50) until May 31, 2005.

(b)      Effective June 1, 2005, the Employer agrees to contribute to the Local 342 Independent Fund, for all employees hired prior to November 1, 2004, for the purpose of providing a program of Health and Welfare benefits as established by the Trustees of the Trust Fund. The Employer shall pay increased rates in accordance with the following schedule:

| Effective | Amount |
|---|---|
| June 1, 2005 | $575.00 |
| June 1, 2006 | $650.00 |
| June 1, 2007 | $700.00 |
| June 1, 2008 | $725.00 |

The Employer agrees to a $30.00 call in each year of the agreement, if needed, with roll-ups. A drop in the three-month reserve triggers the $30.00 dollar call.

(c)    For a newly employee on whose behalf another Employer made contributions to the Local 50 Welfare Fund or Local 342 Independent Fund during the six (6) months immediately preceding his date of hire, the Employer will make contributions in his behalf at the rates set forth above, commencing with the first (1st) day of the calendar month following the date of his hire.

(d)    For a newly hired employee on whose behalf contributions to the Local 50 Welfare Fund or Local 342 Independent Fund were not made by another Employer during the six (6) months immediately preceding his date of hire, the Employer will make contributions at the rates set forth above on the first (1st) day of the calendar month following completion of six (6) consecutive months of full-time employment.

(e)    For an employee who is transferred from another retail Union of the New York-New Jersey Butchers District Council to Local 342 and who at the time of transfer was covered by the Welfare Fund of the Local Union from which he is being transferred, the Employer will make contributions to the Local 342 Independent Fund in his behalf at the rates set forth above, commencing on the first (1st) day of the calendar month following completion of thirty (30) days of full-time employment.

(f)    The Employer agrees to cover the employees, at no cost to the employees, for Sickness and Accident Insurance as required by the New York State Disability Law.

(g)    The Employer will cooperate with the Union in the formation of an Alcohol Rehabilitation program.

(h)    The Employer agrees that when the Mobile Medical program is instituted, it will provide the necessary paid time for its employees to utilize said program.

(i)    The parties agree that a portion of the contribution to the Welfare Fund on behalf its employees shall be used for the purpose of providing supplemental insurance benefits to employees disabled as a result of on-the-job injury and certified by Workmen's Compensation.

(j)    The Employer shall continue contributions to the Local 342 Independent Fund for a period not to exceed six (6) months for an employee who is on authorized sick leave, and for a period not to exceed twelve (12) months for an employee who is being paid Workmen's Compensation benefits due to an injury on the job.

(k)    The Employer agrees to be bound by the Agreement and Declaration of Trust as may be amended establishing the Welfare Fund including the provisions for the collection of contributions.

(l)    The contribution to the Local 342 Independent Fund shall be remitted by the Employers on or before the twentieth (20th) day of each month. Upon the failure of the Employer to make

L-50 Distributive 2004-2008 DRAFT - FINAL clean                    16

contributions within thirty (30) days of the date due, the Trustees shall be entitled at their sole option to take any actions permitted by this Agreement, by agreements and declarations of trust establishing the funds or by law to collect said contributions.

## 2ND TIER WELFARE BENEFITS (For employees hired on or after November 1, 2004)

(1)    For all employees hired on or after November 1, 2004, the Employer agrees to contribute to the UFCW Local 342 Health Care Fund, for the purposes of providing a program of Health and Welfare benefits as established by the Trustees of the Trust Fund, for each eligible employee, per month, beginning with the first day of the month in accordance with the following schedule:

(a)    Family Coverage                                          Amount

Effective January 1, 2005.................................$360.00
Effective January 1, 2006.................................$380.00
Effective January 1, 2007.................................$400.00

The Employer agrees to a $25.00 call in 1/1/05 if needed, a $25.00 call in 1/1/06 if needed, a $25.00 call in 1/1/07 if needed, and a $25.00 call in 1/1/08 if needed.

(b)    Single Coverage, One (1) Dependent                       Amount

Effective January 1, 2005.................................$330.00
Effective January 1, 2006.................................$350.00
Effective January 1, 2007.................................$360.00

The Employer agrees to a $25.00 call in 1/1/05 if needed, a $25.00 call in 1/1/06 if needed, a $25.00 call in 1/1/07 if needed, and a $25.00 call in 1/1/08 if needed.

(c)    Single Coverage                                          Amount

Effective January 1, 2005.................................$200.00
Effective January 1, 2006.................................$240.00
Effective January 1, 2007.................................$280.00

The Employer agrees to a $20.00 call in 1/1/05 if needed, a $20.00 call in 1/1/06 if needed, a $20.00 call in 1/1/07 if needed, and a $20.00 call in 1/1/08 if needed.

(2)    Contributions for all new employees shall commence with the first week following the completion of twelve (12) months of employment.

(3)    The principal and income of said Welfare Fund shall be used for the sole and exclusive benefit of the members of the Union employed by the Employer contributing thereto and the

families and dependents of such member-employees to provide them with such health insurance, death benefit, hospitalization, surgical benefits and such other benefits as the Trustees of the Fund shall from time to time establish.

(4)     The Employer shall provide, at no cost to its employees, such statutory disability and accident insurance coverage as may be required pursuant to the laws of the State of New York.

(5)     The Employer shall continue contributions to the UFCW Local 342 Health Care Fund, for a period not to exceed six (6) months for an employee who is on authorized sick leave, and for a period not to exceed twelve (12) months for an employee who is being paid Worker's Compensation benefits due to an injury on-the-job.

(6)     The Employer agrees to be bound by the Agreement and Declaration of Trust as may be amended establishing the Welfare Fund including the provisions for the collection of contributions.

(7)     Any determination by the Trustees of UFCW Local 342 Health Care Fund that additional contributions are necessary to maintain the existing plan of benefits shall be final and binding and the Employer agrees to pay any such additional contributions. All disputes or differences arising out of the interpretation or application of the terms of this Article shall be submitted to arbitration before the arbitrator(s) designated for the determination of contribution delinquency disputes by the applicable Fund. The decision of the arbitrator shall be final and binding on the parties, who shall equally bear the expenses of the arbitration. The arbitrator shall have no authority to add to, delete or modify any of the provisions of this Article.

## MEDICAL FOR RETIREES

For the purposes of this article/clause only, the term "window period" shall mean:

1.     Window Period shall be from January 1, 2006 thru and including June 30, 2006, for employees who are 62 thru 65 years of age and retire during this period.

All employees who elect to retire between the age of 62 and at any time prior to their 65th birthday and do so within the window periods as defined above, are entitled to receive medical insurance benefits up until the date they are eligible to receive Medicare coverage or death, at which time the company's obligation to pay for coverage ceases. The Employer shall pay the entire cost of the monthly welfare contribution as defined below. The Local 342 Independent Welfare Fund, Plan 4, shall provide the benefits for which the company agrees to contribute for retiree coverage, in accordance with the following schedule:

| Effective | Contribution rate |
| --- | --- |
| January 1, 2006 | $558.00 per month |
| June 1, 2007 | $609.00 per month |
| June 1, 2008 | $659.00 per month |

## ARTICLE 15 - PENSION TRUST FUND

(a)    For all employees hired prior to November 1, 2004, the Employer agrees to continue to contribute monthly to the UFCW Local 50 Pension Trust Fund. The Employer shall pay increased rates in accordance with the following schedule:

| Effective | Amount |
|---|---|
| June 1, 2005 | $192.00 |
| June 1, 2006 | $212.00 |
| June 1, 2007 | $232.00 |
| June 1, 2008 | $252.00 |

The principal and income thereof shall be used for the sole purpose of providing for the employees of the Employers contributing thereto retirement and other benefits based upon accepted actuarial standards, including the administration and maintenance of said Fund.

(b)    In the event of absence due to illness, Pension payments shall continue for a period not to exceed three months from the date of illness.

(c)    The Union and the Employer agree that if the Trustees of the Local 50 Welfare Trust Fund and the Local 50 Pension Trust Fund, upon advice of their actuary and Fund Consultant, determine, in their sole discretion, that it is prudent and actuarially sound for contributions to the Pension Fund to be waived, in whole or in part, and for contributions to the Welfare Fund to be increased in an amount equal to the waived Pension Fund contributions, the Employer agrees to reduce its contributions to the Pension Fund and increase its contributions to the Welfare Fund in the amount, and for the period of time, determined by the Trustees.

## ARTICLE 16 - INTERNATIONAL UFCW FUND

For all employees hired prior to November 1, 2004, the Employer agrees to continue to contribute a monthly sum of thirty-two dollars ($32.00) to the United Food & Commercial Workers International Union and Industry Pension Fund. These contributions will be used to purchase a twenty-dollar ($20.00) future service benefit for the employees. These contributions shall be due and payable the 1st day of the month following thirty (30) days of employment.

The Employer shall sign the appropriate Participation Agreements required by the United Food & Commercial Workers International Union and Industry Pension Fund.

The Employer agrees to be bound by the Agreement and Declaration of Trust as may be amended establishing the United Food & Commercial Workers International Union and Industry Pension Fund, including the provisions for the collections of contributions.

## ARTICLE 17 - ANNUITY BENEFIT FUND

For all employees hired on or after November 1, 2004, and upon completion of twelve (12) months of service, the Employer agrees to contribute monthly within the first week of each calendar month to the UFCW Local 342 Annuity Fund the following sums, per employee, for all covered employees who have worked at any time during the month, in accordance with the following schedule:

| Effective Date | Amount |
|---|---|
| June 1, 2005 and for the duration of this agreement | $100.00 |

The Employer shall sign the appropriate Participation Agreements required to establish and maintain the UFCW Local 342 Annuity Fund.

## ARTICLE 18 - SAFETY-EDUCATION-CULTURAL FUND

The Employer agrees to contribute monthly to the Amalgamated Meat Cutters & Retail Food Store Employees Union Safety Education and Cultural Fund Local 342, on behalf of each employee on the first day of the calendar month following completion of thirty (30) days of employment in accordance with the following schedule:

| Effective | Amount |
|---|---|
| June 1, 2005 | $8.00 |
| June 1, 2007 | $9.00 |

The Employer agrees to a $4.00 call per month in each year of the agreement, if needed with roll-ups.

It is understood and agreed that the Safety-Education-Cultural Fund referred to herein shall be such as will continuously qualify for approval by the Internal Revenue Service.

The Employer agrees to be bound by the Agreement and Declaration of Trust as may be amended establishing the Safety-Education-Cultural Fund including the provisions for the collection of contributions.

## ARTICLE 19 - LEGAL FUND

The Employer agrees to contribute monthly to the Amalgamated Meat Cutters & Retail Food Store Employees Union Legal Fund Local 342, on behalf of each employee on the first day of the calendar month following completion of thirty (30) days of employment in accordance with the following schedule:

| Effective | Amount |
|-----------|--------|
| June 1, 2005 | $8.00 |
| June 1, 2007 | $9.00 |

The Employer agrees to a $4.00 call per month in each year of the agreement, if needed with roll-ups.

It is understood that the Legal Fund referred to herein shall be such as will continuously qualify for approval by the Internal Revenue Service.

The Employer agrees to be bound by the Agreement and Declaration of Trust as may be amended establishing a closed panel, representative Legal Fund, including the provisions for the collection of contributions.

## ARTICLE 20 - MANAGEMENT AND ADMINISTRATION OF THE TRUST FUNDS

(a)     The Local 50 Welfare Trust Fund, Local 342 Independent Welfare Fund, Local 342 Health Care Fund, UFCW Local 50 Pension Trust Fund, Local 342 Annuity Fund, Local 342 Safety-Education-Cultural and Legal Funds are maintained and operated under the terms and provisions of an existing Agreement and Declaration of Trust, a copy of which has been furnished to the Employer. The Employer hereby acknowledges the receipt of the same. Said Agreement and Declaration of Trust provides amongst other things that the Trustees shall have the power to demand, collect and receive all Employer contributions to the Welfare and Pension Trust Funds, Local 342 Annuity Fund, UFCW Local 342 Safety-Education-Cultural and Legal Funds for the purposes specifies in said Agreement of Trust, as from time to time amended, and the Trustees are further empowered to take whatever legal proceedings are necessary for the enforcement of the Employer's obligations under the terms of this Collective Bargaining Agreement.

(b)     In the event the Welfare, Pension, Annuity, Safety-Education-Cultural and Legal Fund contributions as provided for above are sixty (60) days in arrears and if the Fund starts an arbitration proceeding or action at law for collection, then the Employer shall pay, in addition to the unpaid contributions: interest on the unpaid contributions; an amount equal to the greater of interest on the unpaid contributions or liquidated damages in the amount of twenty percent (20%) of the unpaid contributions; the actual cost of arbitration or litigation; and reasonable attorneys'

fees. Prior to bringing any such arbitration of action, the Funds shall serve a ten (10) day notice in writing of their intent so to arbitrate or sue.

(c)    It is further expressly agreed that for the purpose of the United States Bankruptcy Act or any State insolvency or debtor and creditor laws, the contributions payable by the Employer to the Trustees of all Welfare Trust Funds, Pension Trust Fund, Annuity Fund, UFCW Local 342 Safety-Education-Cultural and Legal Funds as aforesaid shall be considered as wages and have priority as such provided in said Act or such laws with respect to wages, and that the Trustees of the Trust Funds shall be deemed separate claimants with respect to each Employer from whom contributions due shall not have been paid.

(d)    In the event that the Welfare Trust Funds, Pension Trust Fund, Annuity Fund, Safety-Education-Cultural and Legal Funds commence an arbitration for the collection of delinquent contributions, that dispute shall be submitted to John Kennedy, or his successor chosen by the parties, for his determination and award. The arbitrator's award shall be final and binding and subject to enforcement in a court of competent jurisdiction in the State of New York or New Jersey.

## ARTICLE 21 - SEVERANCE PAY AND SEVERANCE PAY FUND

(a)    The parties hereby continue the Severance Pay Fund, which has heretofore been established, administered Jointly by Trustees appointed by the Union and the Employers signatory to contracts with the Union providing for such a Fund. The Employer shall contribute two dollars ($2.00) per week to the Severance Pay Fund for each employee covered by this Agreement commencing as of each employee's first day of employment for the period of this Agreement, subject, however, to the right of the Trustees to change such rate of contribution from time to time, and upon receiving written notice of such a change from the Trustees, the Employer shall be obligated to pay contributions in accordance with the rate so determined by thee Trustees and set forth in said notice.

(b)    Employees shall accrue severance pay, based on guaranteed weekly minimum pay over the last contract year, as follows:

| Years of Continuous Service | Weeks of Pay |
|---|---|
| 1 | 1 |
| 2 | 2 |
| 3 | 3 |
| 4 | 4 |
| 5 | 5 |
| 6 | 6 |
| 7 | 7 |
| 8 | 8 |
| 9 | 9 |
| 10 | 10 |

(c)    The following rules shall apply with respect to severance payments:

(1)    Severance pay shall be due and payable in the event that any employee is permanently and involuntarily laid off, other than for his own fault, due to adverse economic conditions, a consolidation of routes, a cessation of an Employer's business or an Employer's bankruptcy.

Notwithstanding the foregoing, severance pay shall not be due and payable to any employee (a) who, within sixty (60) days of his layoff, is offered employment in a bargaining unit represented by UFCW Local 342 and the new Employer agrees it will recognize for all purposes the seniority the employee accrued at his prior Employer under its Collective Bargaining Agreement with UFCW Local 342, (b) filed an application for his pension from the Local 50 Pension Trust Fund prior to his layoff, (c) who leaves his employment due to illness, injury, or disability, or (d) whose permanent layoff is due to his own entrepreneurial decision to sell or terminate a going business, either to retire or otherwise, and is not due to the bankruptcy or liquidation of his business because of economic reversal.

(2)    Severance Pay, when paid by the Severance Fund, shall be pain in a lump sum at the rate of three hundred dollars ($300.00) per week or the employee's actual weekly rate of pay, whichever is less.

(3)    No employee shall receive more than ten (10) weeks of severance pay from the Severance Pay Fund during his lifetime.

(4)    Each employee entitled to receive Severance Pay shall in addition be entitled to receive upon his termination of employment all accrued vacation pay and al unused sick leave.

(5)    In the event that an employee shall die before he receives severance pay that is due and payable, then the same shall be paid to his beneficiary, designated by him in writing to the Severance Fund, or if no designation has been made, to his distributes as that term is defined by the law of the State of New York, in effect on the date of such death.

(d)    In the event that Severance Fund contributions as provided for above are sixty (60) days in arrears and. if the Fund starts an arbitration proceeding or action at law for collection, then the Employer shall pay, in addition to the unpaid contributions: interest on the unpaid contributions; an amount equal to the greater of interest on the unpaid contributions or liquidated damages in the amount of twenty percent (20%) of the unpaid contributions; the actual cost of arbitration or litigation; and reasonable attorneys' fees. Prior to bringing any such arbitration or action, the fund shall serve a ten (10) day notice in writing of its intents so to arbitrate or sue.

(e)    It is further expressly agreed that for the purpose of the United States Bankruptcy Act or any State insolvency or debtor and creditor laws, the contributions payable by the Employer to the trustees of the Severance Fund as aforesaid shall be considered as wages and have priority as such provided in said Act or such laws with respect to wages, and that the Trustees of the

Severance Fund shall be deemed separate claimants with respect to each Employer from who contributions due shall not have been paid.

(f)     Notwithstanding the above, the Employer's contributions to the Severance Fund shall be suspended until such time that said fund falls below $450,000 as certified by the Trustees to the Fund. At that time, contributions will resume and continue until such time as the Fund reaches $500,000, which shall cause a further suspension of contributions until the $450,000 plateau is reached.

## ARTICLE 22 - DISCHARGE-LAYOFF

(a)     There shall be no discharge or layoff by the Employer of any employees except for intoxication, use of drugs that can be proven while on duty or in the event that an employee is involved in an act of dishonesty.

(b)     If, for any reason, the Employer finds it necessary to discharge or layoff an employee, the Employer shall first notify the Union in writing of its intention. Such notice shall be given by certified mail, return receipt requested, at least seventeen (17) days in advance of the proposed discharge or layoff. The Union shall then investigate the charges preferred or the reasons for layoff and render to the Employer the Union's decision of approval or disapproval, as promptly as possible. Either party, however, may institute arbitration proceedings under Article 23, either as soon as notice is given to the Union, within the seventeen (17) day period, or at or after the end of the seventeen (17) day period. Once such an arbitration has been instituted, then pending the determination of the arbitration the employee shall continue on the job.

## ARTICLE 23 - GRIEVANCES

(a)     Grievances arising between the Employer and the employees or between the Union and the Employer shall be reported to the Union and the Employer respectively. In the event no adjustment can be reached within two (2) days after the grievance is submitted by one party to the other, either party may then apply to the New York State Mediation Board (or to the American Arbitration Association or to the New Jersey Board of Mediation should the Employer be based in New Jersey) for appointment of an arbitrator. During the period of arbitration, there shall be no strikes or lockouts by either party to this Agreement.

(b)     Any employee, the Union or the Trustees of the Welfare Trust Funds, Pension Trust Fund, Annuity Fund, Safety-Education-Cultural, Legal and Severance Funds shall have the option to institute an arbitration proceeding or action at law for the collection of monies pursuant to any money obligation under this Agreement. In any such proceeding or action, interest at the prevailing rate and reasonable attorneys fees shall also be payable by the delinquent Employer. The Employer shall receive ten (10) days written notice by certified mail of the intent to institute legal or arbitral proceedings. In addition to any other remedy, in the event of non-payment of wages, Welfare Trust Funds, Pension Trust Fund, Annuity Fund, Safety-Education-Cultural, Legal and Severance Fund contributions, or any other money obligation of the Employer under

this Agreement, the Union shall be free to strike the Employer after having given the Employer ten (10) days written notice of such right to strike for non-payment by certified mail, return receipt requested, or seven (7) days written notice by personal service.

## ARTICLE 24 - SENIORITY

(a)     Seniority shall govern with respect to layoff, recall and choice of vacations.  No person shall be hired until all laid off employees who are qualified to perform the work, as determined by the Employer in his discretion, are rehired, or shall have refused to return to work after receiving five (5) days written notice of recall.  Recall rights shall terminate six (6) months after layoff.

(b)     In the event a new route is established or an existing route becomes available, the employees of that Employer shall have the right to such route in the order of their seniority, provided, however, that only one change within said order of seniority may be made.

(c)     Seniority shall be based upon the length of employment, providing the employee is capable or qualified to perform the duties of the job.  Shop Stewards shall have super-seniority on layoff.

## ARTICLE 25 - STRIKES, LOCKOUTS AND STOPPAGES

(a)     This Agreement provides for an orderly adjustment of all matters in dispute between the parties.  It is agreed that except as may be expressly provided herein, strikes, lockouts, stoppages of work and institution of legal proceedings are prohibited during the pendency or an arbitration hearing.

(b)     In the event the Employer fails to abide by an arbitration decision or judicial judgment or order, then the Union shall be free to take such action, including a strike, as it deems appropriate, and no such action shall be construed to be a breach of this contract.

(c)     The Union, its officers, Representatives and/or agents, shall not be held liable in the event that any of the Articles contained herein shall be found to be inconsistent with any existing Federal or State legislation, and as a result thereof, the Employer sustains loss or damage.

## ARTICLE 26 - SHOP STEWARDS

(a)     The Employer recognizes the right of the Union to designate Shop Stewards.  Only one Shop Steward shall be selected, but if there are more that twenty (20) employees, the Union shall have the right to designate a second Shop Steward.

(b)     The authority of Shop Stewards so designated by the Union shall be limited to and shall not exceed, the following duties and activities:

1.    The investigation and presentation of grievances in accordance with the provisions of the Collective Bargaining Agreements;

2.    The collection of dues when authorized by appropriate Union action.

3.    The transmission of such messages and information, which shall originate with, and are authorized by the Union or its officers.  Provided such messages and information:

(i)    Have been reduced to writing, or;

(ii)    If not reduced to writing, are of a routine nature and do not involve work stoppages, slowdowns, refusal to handle goods, or any other interference with the Employer's business.

Shop Stewards have no authority to take strike action, or any other action interrupting the Employer's business, except as expressly authorized by official action of the Union.

The Employer recognizes these limitations upon the authority of Shop Stewards and shall not hold the Union liable for any unauthorized acts.  In so recognizing such limitations, the Employer shall have the authority to impose proper discipline in the event the Shop Steward takes unauthorized strike action or other work stoppage in violation of this Agreement.

(c)    The Employer will not discriminate against any Shop Steward on account of his acts as such.

(d)    The Employer shall, with reasonable notice, give one (1) Shop Steward a day off no more than once each year with pay for the purpose of attending a Union Shop Stewards conference or seminar.

## ARTICLE 27 - REAL PARTY IN INTEREST

It is mutually agreed that the Union is the real party in interest under the terms of the Agreement with respect to the proper enforcement of any of its provisions, and no individual member of the Union may take any action with reference to any subject matter covered by this Agreement without the consent of the Union.  Anything to the contrary notwithstanding, nothing in this clause shall be construed as a modification of the provisions of this Agreement governing the submission of complaints, grievances, and disputes to arbitration and the determination thereof.

## ARTICLE 28 - MISCELLANEOUS

(a)    The Employer agrees that he will not enter into any private Agreement with any employee, verbally or in writing, which may be inconsistent or in conflict with this Agreement.

(b)    The Union shall have the right to inspect and audit payroll records of the Employer applicable to employees covered by this Agreement to determine whether the Employer has performed all the wage, benefit contributions and any other monetary obligations under this Agreement. In the event a willful violation is found by the Union, and such violation involves an underpayment of five percent (5%) or more of the Employer's gross monthly payroll with respect to the employees covered by this Agreement, then the cost of such audit shall be borne by the Employer and paid upon demand. The Trustees of the Welfare, Pension and Severance Funds shall have the same rights as the Union under the foregoing with respect to benefit contributions due to said respective Funds.

(c)    The Union shall also be informed as to the amount of business per week of any or all routes, in order to assure that the terms and conditions of this contract are fully enforced.

(d)    No route rider shall operate any route except in an emergency or because of the illness or injury of a route salesman or as a vacation replacement.

Route riders shall not be replacements for Special Deliverymen Chauffeurs except on occasions of temporary labor shortages at the Employer's plant.

(e)    The Employer agrees to grant the necessary and reasonable time off without discrimination or loss of seniority rights, to any employee designated by the Union to attend a labor convention or serve in any capacity on other official Union business provided that forty-eight (48) hours written notice is given to the Employer by the Union, specifying length of time required. The Union agrees that, in making this request for time off for Union activities, due consideration shall be given to the number of men affected in order that there shall be no disruption of the Employer's operations due to the lack of available employees.

(f)    Owners, managers or supervisors within the meaning of the National Labor Relations Act shall not operate any truck, the operation of which is covered by this Agreement. This shall not apply to working supervisors covered by this Agreement.

(g)    Route salesmen shall not be required to take inventory of merchandise on a truck more than once a week. The Employer reserves the right to check the truck at any time providing the salesmen will be present to observe. If such checking shall take more than one (1) hour, the Employer shall pay the salesman for such excess time at the rate of fifteen dollars ($15.00) per hour or part thereof.

(h)    Should the Employer require any employee to give bond, cash bond shall not be compulsory and any premium involved shall be paid by the Employer. The primary obligation to procure the bond shall be on the Employer.

(i)    Failure to make a delivery because of no parking facilities shall in no event be chargeable to the employee. The employee shall promptly notify the Employer of such condition as soon as practicable. The employee shall be responsible for all traffic tickets received except for double parking or non-operating violations of the truck. All tickets shall be delivered to the Employer promptly and a receipt given to the employee. Should the employee fail to report receipt of a

ticket to the Employer, then the employee shall be responsible for all additional governmental penalties that may be assessed.

(j)     No employee shall be required to operate any vehicle that is not in good operating condition and in conformity with all requirements and standards imposed by law. An employee's refusal to operate a vehicle which does not conform to this provision or to law shall not be a cause for discipline or penalization of any kind provided the employee notifies the Employer of the reason for such refusal.  Should there be a question as to whether a vehicle is in good operating condition, then the applicable vehicle shall, at the end of the working day, be brought to the nearest State inspection station and the mechanic's decision shall be controlling.  All time lost by a salesman-distributor or a special deliveryman chauffeur shall be borne by the Employer at the hourly rate of pay of a Special Deliveryman Chauffeur.

(k)     In the event that the Employer changes from store-to-store delivery to warehouse delivery, whether at the Employer's initiative or a customer's request, the jobs and earning of all employees based on average weekly earnings shall continue unimpaired and undiminished for a period of eighteen (18) weeks.

(l)     When routes are rearranged at the Employer's request and this results in loss of earnings to the route men involved, then the Employer guarantees the affected men their average weekly earnings for eighteen (18) weeks from the date of rearrangement to be paid weekly (based on average weekly earnings for the previous year).  This guarantee, however, shall not apply where the route man makes the request.

(m)     No existing routes operated by salesmen distributors shall be eliminated or combined or consolidated with any other route operated by salesmen distributors without the consent of the Union.

(n)     The Union shall have the right to require the Employer to furnish and maintain either a surety bond in the amount of $5,000.00, or equivalent security, to cover Welfare, Pension and Severance Fund payments, vacation pay, withheld Union dues and assessments, and accumulated sick pay, and the Employer shall furnish such a bond within ten (10) days after the Union's written demand therefore. Should the Union refer to the Employer's not compliance to arbitration, the arbitrator's fee shall be borne in its entirety by the losing party.

(o)     Authorized Representatives of the Union shall have access to the Employer's establishment for the purposes of adjusting disputes, investigating working conditions, collecting dues, and ascertaining that the Agreement is being adhered to.  Such activities will be carried on without interrupting the Employer's business.

(p)     Store to store deliveries of the products manufactured or delivered by the Employer must be made by salesmen distributors.

(q)     Should anyone other than an employee working hereunder make a delivery theretofore made by an employee working hereunder, then the salesman or deliveryman involved shall nevertheless continue to receive pay. If a salesman is involved, he shall receive the commission

for each such delivery and if a deliveryman is involved, he shall be paid one hour's pay based on average earnings, except if such work is done on a Saturday, Sunday or holiday, and then the employees as a group shall receive a full day's pay for that day for each non-unit employee sent out on deliveries. The foregoing provisions shall not apply with respect to an emergency, that is, a delivery that is not planned in advance.

(r)     Within a 550 mile radius of Columbus Circle, the Employer shall not subcontract out any work covered by this Agreement, or distribute products, or cause any of the work covered by this Agreement to be performed other than by employees working under this Agreement, the effect of which would be to reduced jobs or earnings of employees employed hereunder or to interfere with stops being serviced by employees employed hereunder, except only as may have been in effect as of October 31, 1978, and then only to the extent of such exception as of that date. The foregoing shall not preclude any distributor from developing new accounts.

(s)     The taking of a lie detector test shall not be a condition of obtaining or retaining employment and a refusal of an employee to submit to a lie detector test shall not be a cause of discipline.

## ARTICLE 29 - SAVINGS CLAUSES

(a)     Should any Federal or State law or final determination of any board, governmental agency, or court of competent jurisdiction hold any provision of this Agreement, or its application to any person or circumstances, invalid, then the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.   The parties shall, at the request of either, bargain collectively with respect to any provision so held invalid.

(b)     In agreeing upon the terms and conditions herein set forth, the Employer and the Union both acknowledge that the wages and other benefits herein provided constitute fair and reasonable compensation to employees for the work covered herein.  It is understood and agreed that the employees are to receive the full aggregate value of wages and benefits herein provided. Should any law or regulation operate to delay or deny implementation of any part of this Agreement, the parties shall agree on the equivalent value same to be paid as soon as legally permissible (whether or not this Agreement shall have terminated by its terms), and under such circumstances that may change the form or relationship of the various wage and benefit items of this Agreement without changing the total aggregate value.  In the event the parties are unable to agree on such equivalent value, then either party may bring the matter to arbitration as set forth herein and the arbitrator shall have full power to determine the equivalent value to be aid to employees, without diminution thereof.

(c)     The parties agree to cooperate in making any application to any governmental body necessary to validate this Agreement and permit the payment and receipt of all wages and benefits herein provided.

(d)     In the event, notwithstanding the efforts of the parties, any law or regulation prevents payment of any part of the wages or benefits herein provided, or the equivalent value as and when due, then on seven says written notice to the Employer, the Union may terminate this Agreement.

## ARTICLE 30 - BEGINNERS NEW TO THE INDUSTRY

The provisions of this Article apply to all employees "New to the Industry" who are hired after November 1, 1984.

(a)     The starting salary for any beginner new to the industry, except for salesmen distributors, shall be two dollars ($2.00) less than the scale for regular employees.  Thereafter, said beginner shall receive a forty cent (40¢) an hour increase every six (6) months for the next thirty (30) months and at the end of thirty-six (36) months of employment, the wage for said beginner shall be equal to the then scale for regular employees.

For salesmen distributors, the starting salary and weekly guarantee shall be twenty-five dollars ($25.00) a week less than the scale for regular employees and shall be increased by four dollars ($4.00) a week every six (6) months until the then scale is reached after three (3) years.

(b)     For beginners new to the industry, the bonus payment shall be as follows:

| | |
|---|---|
| 1st Year | None |
| 2nd Year | $300.00 |
| 3rd Year | $450.00 |
| After 3 Years | the same rate as regular employees |

(c)     (Subject to Articles 14,15,16,17,18 and 19) For beginners new to the industry, no pension contributions shall be required for the first ninety (90) days of employment. Welfare contributions shall start from the first date of employment.

(d)     For beginners new to the industry, sick leave benefits shall be as follows:

| | |
|---|---|
| 1st 6 months | 0 days |
| 2nd 6 months | 3 days |
| 2nd year | 5 days |
| 3rd year | 5 days |
| After 10 years | the same benefit as enjoyed by regular employees |

(e)     For beginners new to the industry, paid Jury Duty shall be as follows:

| | |
|---|---|
| 1st year | 0 days |
| 2nd year | 3 days |
| 3rd year | the same as enjoyed by regular employees |

L-50 Distributive 2004-2008 DRAFT - FINAL clean                30

(f)    For beginners new to the industry, the probationary period shall be ninety (90) days, during which time the beginner may be discharged at the discretion of the Employer for any reason. The phrase "new to the industry" as used in this contract shall mean employees who have not worked in any bargaining unit represented by UFCW Local 342 or any other Union in our industry.

(g)    For beginners new to the industry, for the first three (3) years of employment, their payment for holidays, sick days, vacation and funeral leave shall be based on the guaranteed weekly wage.

(h)    Beginners new to the industry in the category of special deliverymen chauffeurs, shall not be entitled to a helper or any additional compensation for deliveries or pick ups in excess of 10,000 pounds.

## ARTICLE 31 - DURATION AND RENEWAL

(a)    Except as provide in Article 27 above, this Agreement shall be binding upon the parties hereto, from the 1st day of November 2004 to the 31st day of October 2008.

(b)    This Agreement shall be binding upon the parties hereto and their successors and assigns, and no provision herein contained shall be nullified or affected in any manner as a result of: (i) any consolidation, sale, transfer or assignment by the Employer herein; (ii) any change to any other form of business organization; or (iii) any change, geographical or otherwise, in the location of the Employer herein. The Employer agrees that it will not conclude an of the above transactions unless an Agreement has been entered into as a result of which this Agreement shall continue to be binding on he person or persons or any business organization continuing the business. It is the intent of the parties that this Agreement shall remain in effect for the full term hereof regardless of any change of any kind in the management, location, form of business organization or ownership.

(c)    Written notice of proposed termination or modification of this Agreement shall be served by mail by either party at least sixty (60) days before the expiration date thereof. If the parties are unable to agree upon the proposed modification or changes on or before the expiration date of this contract, then the contract shall expire on its expiration date. Any modification or changes, which may be agreed upon, shall be in writing and shall become and be a part of the Agreement without modifying or changing any of the other terms of the Agreement. If negotiations are continued beyond the expiration date of this Agreement or of any renewal or modification thereof, the new provisions so negotiated shall be retroactive to the date of expiration thereof.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be signed by their duly authorized Representative the date and year first above written.

**EMPLOYER**

_____
(Signature)

_Marc Strauss_
(Print Name)

_Treasurer_
(Title)

_10/16/06_
(Date)

_S. Strauss Inc_
(Name of Company)

_110 East 148st_
(Address)

_Bronx NY 10451_
(City, State and Zip Code)

_718 665 2756_
(Phone Number)

**UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 342,**

_____
(Signature)

_Joe Lopez_
(Print Name)

_Contracts Dept._
(Title)

_10/24/06_
(Date)